# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

### SAVANNAH DIVISION

KENNETH RAMON SANDERS,     )
                           )
    Movant,            )
                           )
v.                         )    Case No.   CV409-197
                           )                CR495-123
UNITED STATES OF AMERICA,  )
                           )
    Respondent.        )

## ORDER

Kenneth Ramon Sanders moves for 28 U.S.C. § 2255 relief. CR495-123, docs. 1100 & 1113.[1] Most of the facts are undisputed. *See* docs. 1119, 1122, 1123 & 1124. Convicted upon his 1996 guilty plea, docs. 615 & 684, this Court sentenced him to 340 months' imprisonment in part based on his four state court convictions. Doc. 686; doc. 1119 at 3-4.[2] But Sanders later got all four of them vacated. Doc. 1119 at 4-5. He thus returned to this Court in pursuit of a sentence reduction by way of a §

---

[1] The Court is citing only to the criminal docket in this case.

[2] All documents referenced here have been "E-filed." The Court is thus using the electronic, screen-page pagination inserted onto the top of each page by the Court's CM/ECF software.

2255 motion. Doc. 1113.[3]  The government says he waited too long to obtain that state court relief.  Doc. 1119.  He did not file for it until 2003, and for only two of the convictions at that.  *Id.* at 4.  And he did not challenge the other two until 2007.  *Id.* at 4-5.  Hence, it concludes, his 2009-filed, § 2255 motion here is time-barred.  Doc. 119 at 5.[4]

## I.  GOVERNING STANDARDS

Sanders had to file his § 2255 motion within one year from "the date on which the facts supporting the claim or claims presented could

---

[3]  A lot has happened in between his § 2255 motion, "prison-mailbox-filed" on December 11, 2009, doc. 1100 at 13, and his latest § 2255 motion, doc. 1113.  *See* doc. 1109, reported at 2011 WL 1740015.  Plus there were earlier § 2255 motions.  Doc. 1005, *as amended*, doc. 1007; doc. 1009 at 1 (noting earlier filings construed as § 2255 motions); *see also Sanders v. United States*, CV411-111 (S.D. Ga. filed May 5, 2011), *administratively closed* May 6, 2011.  But it is not necessary to recount all that here.  Suffice it to say that all statute of limitations calculations here are premised upon Sanders' December 11, 2009 § 2255 motion.  Doc. 1100.

[4]  The government otherwise concedes (doc. 1119 at 3-4) that his prior convictions contributed to his criminal history score: (1) a 1991 conviction in Chatham County Recorders' Court, docket number 91-09-616, for carrying a pistol without a permit, carrying a concealed weapon, and pointing a gun at another (PSI ¶ 30, 3 points); (2) a 1992 conviction in Chatham County Superior Court, docket number 091-1690-G, for possession of cocaine with intent to distribute (PSI ¶ 29, 3 points); (3) a 1993 conviction in Chatham County State Court, docket number R93D047, for obstruction of a police officer and possession of dangerous drugs (PSI ¶ 31, 1 point); and (4) a 1994 conviction in Chatham County State Court, docket number R94D236, for battery and obstruction of a police officer (PSI ¶ 32, 1 point); *see also* docs 1119-1, 1119-2, 1119-3 & 1119-4 (state criminal court docket sheets).  The PSI shows that this placed Sanders in "a criminal history category of V, [so] the [U.S. Sentencing] guideline range for imprisonment [for him was] 360 months to life."  PSI ¶ 51.  The Court sentenced him to 340 months, doc. 686, later reduced it to 324 months on grounds here not relevant.  Doc. 1045.

have been discovered through the exercise of due diligence." 28 U.S.C. §

2255(f)(4); *Walker v. Martin*, ___ U.S. ___, 131 S.Ct. 1120, 1129 (2011);

*United States v. Johnson*, 544 U.S. 295, 298 (2005).  Those supporting

facts can come from a § 2255 movant's success in getting prior state

court convictions vacated (i.e., those that were used to enhance a federal

sentence), but he must show that he timely pursued that, too.  *Johnson*,

544 U.S. at 298; *Hamilton v. United States*, 2008 WL 4533692 at * 1 (S.D.

Ga. Oct. 6, 2008) (prisoner did not act with reasonable diligence in

seeking to vacate his state sentences; he waited more than 21 months

after his federal sentence was imposed to attack them).

And even if a petitioner timely files and succeeds in state habeas

court, he still must file his § 2255 motion within one year of that success.

*Johnson*, 544 U.S.  at 298 (the one-year limitation period begins to run

when the movant "receives notice of the order vacating the prior

conviction, provided that he sought it with due diligence in state court,

after entry of judgment in the federal case with the enhanced

sentence."); *Stewart v. United States*, 646 F.3d 856, 864 (11th Cir. 2011)

("Because Stewart set out to have his state convictions vacated just

weeks after he was sentenced as a career offender, succeeded, and then

3

promptly brought a § 2255 motion raising a *Johnson* claim, we believe he acted diligently.").

## II. ANALYSIS

There are two views of the record in this case.   Under the government's interpretation, Sanders challenged his state-court, "CR91-1690" and "R93D047" convictions on January 24, 2003, in the Fulton County, Georgia state habeas court.[5]   Doc. 1119-7 at 2-15.   In 2005 that case was transferred to Chatham County, Georgia, where, on March 29, 2006, a state habeas judge granted him relief by vacating both convictions.   Docs. 1119-9, 1119-12 at 2-5.   On October 18, 2007, Sanders challenged conviction "R94D236," for battery and obstruction of a police officer, plus conviction "91-09-616," for gun charges.   Doc. 1119-11 at 1. He succeeded on both on February 28, 2008.   Doc. 1119-13 at 1-2.   Based on those facts, the government says his first (2003) filing is fatal because it occurred more than one year after his federal conviction became final in 1996.   Doc. 1119.   And, of course, the 2007 filings are just more water over the time-bar dam.

---

[5] As the government explains, Doc. 1119 at 4 n. 7, Sanders attacked only the CR91-1690 conviction then, but the state habeas judge *sua sponte* granted him relief on the R93D047 conviction.   Hence, Sanders may claim the benefit of challenging those convictions at the time of his state habeas petition filing.

But Sanders says he in fact filed his first state habeas petition in *1996*, and he tenders a copy of his 1996 file-stamped petition. Doc. 1122 at 1-2, 16-20. He also furnishes what he claims to be a copy of a 1996 letter to his lawyer, Frederick Bergen, and a 1996 response from him, "as to the status of his 1996 pro-se habeas application." *Id.* at 2, 13-14. That petition, however, challenged only his 91-09-616 conviction for carrying a pistol without a permit, carrying a concealed weapon, and pointing a gun at another. (Again, however, the habeas judge *sua sponte* vacated his R93D047 conviction, too, so this Court will treat that filing, if authentic, as a "two-fer".)

"To be blunt, the government believes that Sanders' new documents -- the 1996 Fulton County habeas petition, and the correspondence to and from Sanders' attorney regarding that petition -- are utterly fake. If this Court intends to rely upon those documents in deciding Sanders' current petition, the government requests the opportunity at an evidentiary hearing to challenge their authenticity." Doc. 1123 at 3. The government thus accuses Sanders of perpetrating a fraud upon this Court. It cites supporting evidence. *Id.* at 3-4. Sanders stands on his submissions, doc. 1124, except that he would object to

5

Bergen testifying "since he had a hand in helping [Sanders] with his post-conviction proceedings." *id.* at 2, so questioning him about the documents "would create a conflict of interest." *Id.*

Of course, the Court will not tolerate fraud, and asking Bergen whether a letter from him to Sanders is a fake simply does *not* implicate any attorney-client privilege,[6] much less set up a conflict between him and Sanders:  Sanders is effectively saying the letter is not a fake and that Bergen will back him on that fact (only if Bergen would contradict him in some way would there be a conflict).  And no one would be asking Bergen to betray a confidence, much less a "completed-crime" confidence, because Sanders insists no crime or other wrong has been committed.  Plus a current or contemplated crime is never protected by attorney-client privilege, and attorneys may testify to "client facts" learned elsewhere.[7]

---

[6]  If the letter is fake, then by definition there was *no* attorney-client communication, since the letter did not come from Bergen.  Thus, there would be no privilege to protect.  And if it is not fake, then there is *still* no privilege to protect because Sanders has filed the letter with this Court and thus has waived any privilege surrounding it. AGNOR'S GA. EVIDENCE § 6:5 (4th ed. Nov. 2011) ("A waiver of the attorney-client privilege may be express or implied.").

[7]  Future crimes include a defendant's intent to perjure himself on the witness stand, advance a false claim or document, or tamper with adverse witnesses. *See Shelton v. State*, 206 Ga. App. 579, 580-81 (1992) (it was counsel's duty to prevent defendant, if

Sanders, of course, faces prosecution if he advances perjury and false documentation here. Whether in a witness chair before this Court or while crafting court filings in a prison cell, *no one* (especially a *convicted criminal*) is permitted to lie to or otherwise knowingly mislead

---

possible, from testifying falsely, and if defendant nevertheless testified falsely regarding what information was given by counsel during police interrogation, counsel would be obligated to so advise the court and seek to withdraw, or else be party to fraud); 7A C.J.S. ATTORNEY & CLIENT § 268 (Sep. 2011) ("[i]f the attorney becomes aware of the fact that the claim which he or she is urging for his or her client is fraudulent and fictitious, or if he or she or a member of his or her firm ought to be called as a witness on behalf of his or her client, the attorney has cause to withdraw.") (footnotes omitted); *People v. Kahn*, 906 N.Y.S.2d 782, 2010 WL 161430 at * 8 (N.Y. Sup. Jan. 15, 2010) (attorney could testify against client, ahead of client's criminal trial for assaulting his wife, about client's intent to commit witness tampering); *People v. DePallo*, 96 N.Y.2d 437, 442 (2001) (the "intent to commit a crime is not a protected confidence or secret").

In Georgia,

> [n]o attorney shall be competent or compellable to testify for or against his client to any matter or thing, the knowledge of which he may have acquired from his client by virtue of his employment as attorney or by reason of the anticipated employment of him as attorney. However, an attorney shall be both competent and compellable to testify for or against his client as to any matter or thing, the knowledge of which he may have acquired *in any other manner.*

O.C.G.A. § 24-9-25 (emphasis added). If Bergen testifies that "his letter to Sanders" is fake, then he will have acquired that knowledge in another manner -- from the government, when it contacts him to testify at any evidentiary hearing the Court may hold on this matter. This will be true even if Sanders has told Bergen that the letter is fake prior to that contact, since that knowledge that it is fake would *still* be knowledge Bergen acquired in another manner -- by examining his own personal memory to confirm whether he in fact wrote the letter to Sanders.

this Court. All litigants must swear to any facts advanced in quest of judicial relief, and thus be subject to criminal prosecution if they commit perjury, or submit a false declaration in violation of 18 U.S.C. § 1623(a). *See, e.g., United States v. Dickerson*, CR608-36, doc. 47 (S.D. Ga. Dec. 11, 2008) (convicted of violating 18 U.S.C. § 1623(a) while seeking 28 U.S.C. § 2255 relief); *aff'd*, 2010 WL 4409382 (11th Cir. Nov. 8, 2010), *Irick v. United States*, 2009 WL 2992562 at * 2 (S.D. Ga. Sept. 17, 2009); *Hayes v. United States*, 2011 WL 3468799 at * 5 (S.D. Ga. Aug. 9, 2011).

Sanders shall therefore file an affirmation, under oath or declaration, as to the authenticity of all documents that he has filed. He must do so within 21 days of the date this Order is served upon him or face recommended dismissal of his § 2255 motion on those grounds alone.

But even if the 1996 habeas petition is authentic, argues the government, Sanders is still too late. It is undisputed that the Fulton County court sat on the 1996 petition for years and Sanders did nothing until 2003, when he simply filed a fresh new petition there. "Filing a habeas petition and waiting seven years without making any significant inquiries as to its status falls far short of due diligence," thus argues the government. Doc. 1123 at 5. So this Court would be justified, it

8

concludes, "in denying Sanders' motion without delving into the legitimacy of these new [1996] documents." *Id.*

The Court is not so sure.  It is hardly clear cut that a petitioner should be penalized for waiting patiently due to *judicial* indolence:

> [J]udicial systems are operated by human beings who err. Defendants know this. They thus must make a reasonable inquiry, even if counsel tells them they may rest easy and do nothing, if in fact a large amount of time marches by and nothing happens in their cases. But if someone or something external to them reasonably lulls them into inaction, then tolling may be applied. And when a court (as opposed to one's lawyer) speaks, extra legal impact is assigned to that fact. *Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002) (tolling applied where petitioner was assured that the state court would contact him, and he demonstrated diligence in pursuing the information when the state court clerk inadvertently sent notice of the decision to the wrong person, and thus did not contact him).

*Clarkson v. Williams*, 2011 WL 2604792 at * 3 (S.D.Ga. Jun. 30, 2011) (cite omitted).  Sanders shall show whether his own laxity or some external obstacle explains his indolence here.

There are still more issues to resolve.  Sanders was not free to litigate each state court conviction seriatim, and thus keep the federal clock suspended for years.  The case law shows that he was he required to file all of his state habeas "vacation" petitions within one year of his federal conviction.  Under Sanders' own version of events, he filed just

9

one (the 1996) petition with enough time to stop the federal clock.  If just that one can be considered, would Sanders not be entitled to re-sentencing, and how much of a difference would it  make?

Arguably, even that seems unnecessary to resolve because, even assuming his 2003 and 2007 state court filings are not time-barred, he still to file his § 2255 motion by no later than February 28, 2009 -- one year after his *latest* state court victory (February 28, 2008).  Yet, he filed it on December 11, 2009.  Doc. 11 at 23.  Hence, his § 2255 motion would be untimely on those grounds alone.  But the government does not argue that, and the record -- replete with multiple case numbers and appeals -- is just plain confusing.  *See* note 3 *supra*.

For example, Sanders filed an earlier motion for § 2255 relief on February 26, *2007*,[8] citing *two* prior convictions then recently vacated. Doc. 1005, *as amended*, 1007.[9]  The Court denied that motion -- *not* on untimeliness grounds, but because it was successive.  Docs. 1009, 1013 & 1014.  Would that 2007 filing support some sort of equitable tolling, *see Clarkson*, 2011 WL 2604792 at * 1-3, at least as to the two vacated

---

[8]   Recall that Sanders' first two state court convictions were vacated on March 29, 2006 and, he claims, he petitioned for that result in 1996.

[9]   This filing triggered the opening of yet a third civil case file, CV407-032.

convictions noted there?  *See also* doc. 1024 (Sanders' request for a hearing, attaching Probation Department letter re-computing his sentence range downward based on the two vacated convictions); doc. 1045 (Order reducing sentence on "Amendment 706" grounds and not on vacated-conviction grounds); doc. 1053 (Order denying his request for a hearing based on re-sentencing, but failing to note that the re-sentencing was only on "Amendment 706" grounds, and not mentioning *vacated-conviction* grounds); doc. 1054 at 2 (Sanders reminded the Court of the vacated convictions); doc. 1058 at 2 n. 1 (Court denied relief on jurisdiction grounds, and also pointed out that Sanders misused 18 U.S.C. § 3582 to win such relief; he instead must invoke § 2255, and file it with the Eleventh Circuit since he had previously invoked § 2255); doc. 1071 at 6 n. 2 (Eleventh Circuit ruling that Sanders was not even entitled to an "Amendment 706" reduction but government failed to appeal, so he was entitled to retain that benefit; it did not reach the two-vacated convictions argument). The Court therefore will give both parties a chance to further brief these issues.

To summarize, Sanders shall file an affirmation, under oath or declaration, as to the authenticity of all documents that he has filed. He

shall also show whether he should be excused for waiting from 1996 to 2003 to prompt the state habeas court to act on his first filing noted above.  He must do both within 21 days of the date this Order is served upon him or face recommended dismissal of his § 2255 motion on those grounds alone.  Within that same time period the government shall brief the other points raised above, and Sanders is free to file a reply brief within 14 days after the government's brief is filed.

SO ORDERED this 6th day of December, 2011.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA